# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| EVA C. COLEMAN, | ) | |
|    Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:06cv00007 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE,[1] | ) | |
|  **Commissioner of Social Security,** | ) | By:  P<small>AMELA</small> M<small>EADE</small> S<small>ARGENT</small> |
|    Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Eva C. Coleman, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423. (West 2003 & Supp. 2006). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007, and is, therefore, substituted for Jo Anne B. Barnhart as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d)(1).

-1-

of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987.) Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966.) "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642.)

The record shows that Coleman protectively filed her application for DIB on February 24, 2003, alleging that she became disabled on February 7, 2002, due to a seizure disorder, diabetes and arthritis. (Record, ("R."), at 52-55, 70.) The claim was denied initially and upon reconsideration. (R. at 28-30, 36, 37-39.) Coleman then requested a hearing before an administrative law judge, ("ALJ"). (R. at 40.) The ALJ held a hearing on March 23, 2004, at which Coleman was represented by counsel. (R. at 299-322.)

By decision dated May 21, 2004, the ALJ denied Coleman's claim. (R. at 20-25.) The ALJ found that Coleman met the nondisability insured status requirements of the Act for DIB purposes through September 30, 2005.[2] (R. at 24.) He further found that Coleman had not engaged in substantial gainful activity since February 7, 2002.

---

[2]The issue currently before this court is whether substantial evidence supports the ALJ's decision that Coleman was not disabled during the period from February 7, 2002, the date of alleged disability, to September 30, 2005, the date Coleman was last insured.

-2-

(R. at 24.) The ALJ found that the medical evidence established that Coleman had a severe impairment, namely migraine headaches, but he found that Coleman did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 24.) The ALJ further found that Coleman's allegations regarding her limitations were not totally credible. (R. at 24.) The ALJ found that Coleman retained the residual functional capacity to perform work at all levels of exertion which did not require climbing or exposure to hazards. (R. at 24.) The ALJ found that Coleman could perform her past relevant work as a cemetery lot salesperson. (R. at 24.) Thus, the ALJ found that Coleman was not disabled under the Act and was not eligible for benefits. (R. at 24-25.) *See* 20 C.F.R. § 404.1520(f) (2006).

After the ALJ issued his opinion, Coleman pursued her administrative appeals, (R. at 16), but the Appeals Council denied her request for review. (R. at 7-11.) Coleman then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2006.) The case is before this court on the Commissioner's motion for summary judgment filed July 25, 2006.

*II. Facts*

Coleman was born in 1958, (R. at 53), which classifies her as a "younger person" under 20 C.F.R. § 404.1563(c) (2006). Coleman has a high school education and has past work experience as a cook, a salesperson and a delivery person. (R. at 71, 76, 302.) Coleman testified that her seizure disorder was controlled with medication.

(R. at 307.) She stated that she suffered from severe migraine headaches two times a month. (R. at 308.)

John Newman, a vocational expert, testified at Coleman's hearing. (R. at 318-20.) Newman was asked to consider an individual of Coleman's age, education and work experience and who was restricted to work that did not involve climbing or working around hazardous machinery or heights. (R. at 319.) Newman testified that Coleman's previous job as a cemetery salesperson could be performed within those restrictions, as well as other occupations. (R. at 319.)

In rendering his decision, the ALJ reviewed records from Washington Square Clinic; Dr. Edward Hunter, M.D.; Dr. Donald R. Williams, M.D., a state agency physician; Eugenie Hamilton, Ph.D., a state agency psychologist; University of Virginia Health Sciences Center; Dr. Mary Anne Smith, M.D.; and Tazewell Community Hospital. Coleman's attorney also submitted medical records from Thompson Family Health Center to the Appeals Council.[3]

The record shows that Coleman was treated at the University of Virginia Health Sciences Center from 1997 through 2004 for complaints of seizure disorder, chronic diarrhea, migraine headaches and arthritis. (R. at 159-201, 292-98.) Coleman reported on numerous occasions that her seizure disorder, as well as her diabetes, were

---

[3]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 7-11), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

controlled with medication. (R. at 159, 173-74, 292, 295.) In March 1999, Coleman was described as slightly anxious. (R. at 176-77.) In September 1999, it was reported that Coleman's migraine headaches were under better control since taking Amitriptyline. (R. at 174.) In November 1999, it was reported that Coleman's complaints of migraine headaches seemed to be tension headaches. (R. at 173.) In July 2004, it was reported that Coleman's headaches were possible migraine headaches versus chronic daily headaches. (R. at 296.) Dr. James Q. Miller, M.D., reported that Coleman's headaches were poorly controlled and were provoked by stress and sad memories. (R. at 296.) Dr. Miller reported that Coleman would benefit from psychological and/or psychiatric help. (R. at 296.) In September 2004, Coleman reported that she suffered from pressure-like headaches every other day. (R. at 292.) She reported that she was depressed most days. (R. at 292.) She admitted to having previous thoughts of suicide, but denied current suicidal thoughts. (R. at 292.) Dr. Miller reported that Coleman was tearful and obviously depressed. (R. at 293.) Dr. Miller reported that it was doubtful that Coleman's headaches would improve until her psychological situation improved. (R. at 293-94.)

On December 15, 1996, Coleman was admitted to Tazewell Community Hospital for "passing out" and a seizure disorder. (R. at 246-60.) A CT scan of Coleman's brain was normal. (R. at 247.) She was discharged on December 17, 1996, with a diagnosis of seizure disorder, syncope, diabetes mellitus and migraine headaches. (R. at 246.) On August 4, 2000, Coleman presented to the emergency room for complaints of headaches. (R. at 235-39.) A CT scan of Coleman's head was normal. (R. at 236, 239.) She was diagnosed with migraine headaches and a seizure disorder. (R. at 235.) On October 18, 2003, Coleman presented to the emergency room

for complaints of pain in her left foot and toes. (R. at 230-34.) Her mood and affect were described as normal. (R. at 231.) X-rays of Coleman's left foot showed an inferior calcaneal spur. (R. at 234.)

On February 22, 1999, Coleman was seen at the Washington Square Clinic for complaints of nodules in her distal interphalangeal joints. (R. at 213.) She was diagnosed with diabetes mellitus, type II with neuropathy, probable osteoarthritis and history of seizure disorder. (R. at 213.) On March 17, 1999, Coleman complained of pain in her legs and arms. (R. at 212.) It was reported that Coleman was crying while talking about her family not understanding that she was in pain. (R. at 212.) Donna Davis, R.N., discussed anxiety and depression with Coleman.[4] (R. at 212.) Coleman reported that she had not experienced a seizure in two years. (R. at 212.) She was diagnosed with diabetes mellitus, type II with neuropathy, a seizure disorder and probable osteoarthritis. (R. at 212.) On August 7, 2000, Coleman complained of burning, tingling and pain in her hands and feet. (R. at 210.) She also complained of severe headaches with left eye pain and pressure. (R. at 210.) It was reported that Coleman was alert and oriented and in no acute distress. (R. at 210.) It was reported that Coleman had some neuropathy beginning in her lower extremities. (R. at 210.) In May 2001, it was reported that Coleman's diabetes was controlled with medication. (R. at 119.) In September 2001, Davis diagnosed Coleman with occasional rectal bleeding from hemorrhoids, perimenopause, depression[5] and a seizure disorder. (R.

---

[4]Coleman did not complain of depression, nor did Davis diagnose depression. (R. at 212.)

[5]Although Coleman was diagnosed with depression, the progress note fails to indicate why this diagnosis was given. (R. at 206.) There is no indication that Coleman complained of depression or exhibited depressive behavior. (R. at 206.) This is the first and only diagnosis of

at 206.) She was prescribed Prozac. (R. at 206.) In September 2002, Coleman reported that she had not had any seizure activity for four years. (R. at 107.)

On May 21, 2003, Dr. Edward Hunter, M.D., examined Coleman at the request of Disability Determination Services. (R. at 121-26.) Dr. Hunter reported that Coleman was in no acute distress. (R. at 123.) Her back had a normal range of motion. (R. at 123.) No tenderness, spasm, kyphosis or scoliosis was found. (R. at 123.) Coleman's cerebellar function was intact and her gait was normal. (R. at 123.) Coleman was alert and oriented. (R. at 123.) Her behavior was appropriate and her thought idea and content was within normal range. (R. at 124.) Dr. Hunter diagnosed a seizure disorder, arthritis, noninsulin dependent diabetes mellitus and diabetic peripheral neuropathy. (R. at 124.) Dr. Hunter reported that he found no specific limitations in Coleman's ability to creep, to crawl, to crouch, to climb, to stoop, to bend, to lift, to carry, to travel, to speak or to hear. (R. at 124.) He found no problems with Coleman's ability to understand and remember, to sustain concentration and persistence, to socially interact or to adapt. (R. at 124.) He reported that Coleman had been seizure-free while medicated. (R. at 124.)

On July 14, 2003, Dr. Donald R. Williams, M.D., a state agency physician, indicated that Coleman had no exertional limitations. (R. at 135-42.) Dr. Williams indicated that Coleman could frequently climb ramps and stairs and should never climb ladders. (R. at 137.) No manipulative, visual or communicative limitations were noted. (R. at 138-39.) Dr. Williams found that Coleman should avoid all exposure to work hazards. (R. at 139.) This assessment was affirmed by Dr. Frank M. Johnson, M.D.,

---

depression from the health care providers at Washington Square Clinic.

another state agency physician, on August 27, 2003. (R. at 142.)

On August 27, 2003, Eugenie Hamilton, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Coleman suffered from a nonsevere affective disorder. (R. at 143-57.) She indicated that Coleman had no limitations in her activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 153.) Hamilton found that Coleman had not experienced any episodes of decompensation. (R. at 153.)

On February 12, 2004, Coleman saw Dr. Mary Anne Smith, M.D., and Melissa Stacy, PA-C, for complaints of left foot pain. (R. at 264-65.) Examination showed that the left foot had decreased dorsalis pedis, and her toes were cool to touch. (R. at 265.) Dr. Smith diagnosed type II diabetes mellitus with possible peripheral vascular disease, possible psoriatic arthritis, a seizure disorder and vasomotor symptoms. (R. at 265.) On March 29, 2004, Coleman complained of frequent headaches and shortness of breath. (R. at 266.) Dr. Smith diagnosed migraine headaches. (R. at 266.) On April 7, 2004, Stacy completed a pain assessment indicating that Coleman's pain was to such an extent that it would be distracting to adequate performance of daily activities or work. (R. at 261.) Stacy did not, however, state the type of pain to which she was referring. She also indicated that physical activity increased Coleman's pain to the extent that medication and/or bed rest was necessary. (R. at 261.) Stacy also indicated that Coleman was restricted from the workplace and was unable to function at a productive level due to the impact of her medication. (R. at 261.)

-8-

On August 2, 2004, Dr. Sharat K. Narayanan, M.D., saw Coleman for her complaints of migraine headaches and a rash on her elbows. (R. at 285-91.) She was diagnosed with type II diabetes mellitus, hypertriglyceridemia by history, a seizure disorder, chronic migraine headaches and psoriasis. (R. at 286.) On August 16, 2004, Coleman complained of chest pain. (R. at 283-84.) Dr. Narayanan reported that Coleman was in no acute distress. (R. at 283.) Coleman's extremities had no edema. (R. at 283.) She was alert and oriented without focal neurological deficit. (R. at 283.) A chest x-ray showed no acute pulmonary pathology. (R. at 283.) She was diagnosed with chest pain, rule out cardiac etiology, hypertriglyceridemia, type II diabetes mellitus and history of chronic migraine headaches. (R. at 283-84.)

## *III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2006). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520 (2006). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2006).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the

claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2003 & Supp. 2006); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated May 21, 2004, the ALJ denied Coleman's claim. (R. at 20-25.) The ALJ found that the medical evidence established that Coleman had a severe impairment, namely migraine headaches, but he found that Coleman did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 24.) The ALJ found that Coleman retained the residual functional capacity to perform work at all levels of exertion, which did not require climbing or exposure to hazards. (R. at 24.) The ALJ found that Coleman could perform her past relevant work as a cemetery lot salesperson. (R. at 24.) Thus, the ALJ found that Coleman was not disabled under the Act and was not eligible for benefits. (R. at 24-25.) *See* 20 C.F.R. § 404.1520(f) (2006).

In her brief, Coleman argues that the ALJ erred by failing to find that she had a severe mental impairment. (Brief In Support Of Plaintiff's Motion For Summary Judgment,[6] ("Plaintiff's Brief"), at 7-9.) Coleman also argues that the ALJ erred by finding that her migraine headaches did not prevent her from performing her past relevant work. (Plaintiff's Brief at 9-11.)

---

[6]Coleman did not file a motion for summary judgment.

-10-

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

The ALJ found that Coleman could perform her past work as a cemetery salesperson. (R. at 24.) Based on my review of the record, I find that substantial evidence exists to support this finding. Progress notes show that Coleman's seizure disorder and diabetes were well-controlled with medication. (R. at 159, 173-74, 205, 292, 295.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). In addition, the medical evidence does not show that Coleman's diabetes resulted in work-related functional limitations. In May 2003, Dr. Hunter diagnosed Coleman with diabetic peripheral neuropathy, but specifically concluded that there were no objective findings to support limitations in her ability to creep, to crawl, to crouch, to climb, to stoop, to bend, to lift, to carry or to travel. (R. at 124.) Dr. Hunter also noted that Coleman had full strength in her lower extremities and a normal gait. (R. at 123.)

Coleman's headaches initially accompanied her seizure activity, but recent

-11-

evidence showed only treatment with Maxalt in March 2004. (R. at 266.) Coleman's treating physician recommended that she return for follow-up treatment only every six months. (R. at 204.) In addition, Coleman was able to work part-time from August 2002 to February 2003. (R. at 302.) Furthermore, none of the doctors who treated or examined Coleman advised her to limit her activity in any way. While Stacy, a physician's assistant, did complete a pain assessment stating that Coleman experienced disabling pain, she did not state the condition causing the pain or what type of pain Coleman suffered. Also, Dr. Hunter concluded that Coleman had essentially no functional limitations from her impairments. (R. at 124.) Similarly, Dr. Williams found that Coleman's impairment resulted in no exertional limitations. (R. at 135-42.)

Coleman also argues that the ALJ erred by failing to find that she had a severe mental impairment. (Plaintiff's Brief at 7-9.) The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. § 406.1521(a) (2006). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. § 406.1521(b) (2006). The Fourth Circuit held in *Evans v. Heckler*, that, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (emphasis

in original).

The ALJ noted that Coleman had not sought or been referred for evaluation or treatment by a mental health professional. In fact, the first diagnosis of depression was in September 2001 by a registered nurse. (R. at 206.) As noted above, there is no indication that Coleman complained of depression or exhibited depressive behavior on that date. (R. at 206.) The record shows that Davis and Coleman discussed anxiety and depression in 1999, but no diagnosis of anxiety or depression was given. (R. at 212.) In May 2003, a mental examination by Dr. Hunter showed that Coleman had no limitations in memory, sustained concentration or persistence or social interaction or adaptation. (R. at 124.) A state agency psychologist reported in August 2003 that Coleman suffered from a nonsevere affective disorder. (R. at 143-57.) The state agency psychologist found no limitations. (R. at 153.) The record shows that Coleman first complained of depression in September 2004, four months after the ALJ's decision. (R. at 292.) Based on this, I find that substantial evidence exists to support the ALJ's finding that Coleman did not suffer from a severe mental impairment.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the ALJ's finding with regard to Coleman's physical residual functional capacity;

2. Substantial evidence exists to support the ALJ's finding with

-13-

regard to Coleman's mental residual functional capacity;

3. Substantial evidence exists to support the ALJ's finding that Coleman had the residual functional capacity to perform her past relevant work as a cemetery salesperson; and

4. Substantial evidence exists to support the ALJ's finding that Coleman was not disabled under the Act and was not entitled to benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court grant the Commissioner's motion for summary judgment and affirm the final decision of the Commissioner denying benefits.

### **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 2006):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

-14-

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 28th day of February 2007.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-15-